UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

**NELSON FERNANDEZ**,

        Plaintiff,

vs.

**BUILD-A-BEAR WORKSHOP,
INC., a foreign for-profit
corporation,**

        Defendant.
_____/

## **COMPLAINT**

Plaintiff NELSON FERNANDEZ, through undersigned counsel, sues Defendant BUILD-A-BEAR WORKSHOP, INC., a foreign for-profit corporation, and alleges as follows:

1.      This is an action for declaratory and injunctive relief, attorney's fees, costs, and litigation expenses for unlawful disability discrimination in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), as amended, and 28 C.F.R. Part 36.

2.      This Court has jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. §1331, and the provisions of the ADA.  Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§2201 and 2202.

3.      Venue is proper in this Court as all actions complained of herein and injuries and damages suffered occurred in the Southern District of Florida.

4.      Plaintiff NELSON FERNANDEZ is a resident of Palm Beach County, Florida, is *sui juris*, and is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

5.      Plaintiff is and at all relevant times has been a visually and physically disabled person who has been diagnosed with Relapsing-Remitting Multiple Sclerosis ("RRMS"). As a result of his disease, Plaintiff is currently paralyzed in approximately 80% to 90% of his body as a whole and only has very limited use of his left hand.  Further as a consequence of his disease, Plaintiff has developed optic neuritis and is visually disabled, with complete blindness in one eye and very limited vision in the other eye.  Plaintiff thus is substantially limited in performing one or more major life activities, including, but not limited to, seeing and accurately visualizing his world and adequately traversing obstacles.  As such, he is a member of a protected class under the ADA, 42 U.S.C. §12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§36.101, *et seq*., and 42 U.S.C. §3602(h).  Plaintiff further is an advocate of the rights of similarly situated disabled persons and is a "tester" for the purposes of asserting his civil rights and monitoring, ensuring, and determining whether places of public accommodation and/or their respective and associated websites are in compliance with the ADA and any other applicable disability laws, regulations, and ordinances.

6.      Because he is visually disabled, Plaintiff cannot use his computer without the assistance of appropriate and available auxiliary aids, screen reader software, and other technology and assistance.  Screen reader software translates the visual internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user. "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring him to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand.  The screen reading software uses auditory -- rather than

visual -- cues to relay this same information.  When a sight impaired individual reaches a link that may be 'clicked on,' the software reads the link to the user, and after reading the text of the link says the word 'clickable.'…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with his keyboard." *Andrews v. Blick Art Materials, LLC*, 17-CV-767, 2017 WL 6542466, at \*6-7 (E.D.N.Y. Dec. 21, 2017).

7.     Defendant is a foreign for-profit corporation authorized to do business and doing business in the State of Florida.  Defendant owns, operates, and/or controls a chain of retail stores selling children's toys and accessories, including one of the stores Plaintiff intended to patronize in the near future located at 10300 Forest Hill Boulevard, Wellington, Florida.

8.     Plaintiff's visual disability limits him in the performance of major life activities, including sight, and he requires assistive technologies, auxiliary aids, and services for effective communication, including communication in connection with his use of a computer.

9.     Plaintiff frequently accesses the internet.  Because he is significantly and permanently visually disabled, to effectively communicate and comprehend information available on the internet and thereby access and comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

10.     At all times material hereto, Defendant was and still is an organization that owns, operates, and/or controls a chain of retail stores selling children's toys and accessories under the name "Build A Bear".  Each Build A Bear store is open to the public.  As the owner and operator of these retail stores, Defendant is defined as a place of "public accommodation" within meaning of the ADA because Defendant is a private entity which owns and/or operates "a bakery, grocery

store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

11.     Because Defendant is a store open to the public, each of Defendant's physical stores is a place of public accommodation subject to the requirements of the ADA, 42 U.S.C. §12182, §12181(7)(E), and its implementing regulations, 28 C.F.R. Part 36.

12.     Defendant also owns, controls, maintains, and/or operates an adjunct website, https://www.buildabear.com (the "Website").  One of the functions of the Website is to provide the public information on the locations of Defendant's stores through a "store locator" feature. Defendant also sells to the public its merchandise through the Website, which acts as a point of sale for merchandise available in, from, and through Defendant's physical stores.

13.     The Website also services Defendant's physical stores by providing information on available products, services, tips and advice, editorials, sales campaigns, events, and other information that Defendant is interested in communicating to its customers.

14.     Because the Website allows the public the ability to secure information about the locations of Defendant's physical stores, purchase merchandise also available for purchase in and from the physical stores, purchase gift cards for use online and in the physical stores, arrange instore pickups and returns of merchandise purchased online, and sign up for an emailer to receive exclusive online offers, benefits, invitations, and discounts for use online and in the physical stores, the Website has a nexus to, and is an extension of and gateway to, the goods, services, privileges, and advantages of Defendant's physical stores, which are places of public accommodation under the ADA.  As an extension of and service, privilege, and advantage provided by a place of public accommodation as defined under the ADA, the Website is an extension of the services, privileges, and advantages made available to the general public by Defendant at and through its brick-and-

mortar locations and businesses.  Furthermore, the Website is a necessary service and privilege of Defendant's physical stores in that, as a point of sale for the stores, it enables users of the Website to make online purchases of Defendant's merchandise that is available from and in its physical stores.

15.     Because the public can view and purchase Defendant's goods through the Website that are also offered for sale in Defendant's physical stores, thus having the Website act as a point of sale for Defendant's products also sold in the physical stores, purchase gift cards to make purchases both online and in the physical stores, arrange in-store pickups and returns of merchandise purchased online, and sign up for an emailer to receive exclusive online offers, benefits, invitations, and discounts for use online and in the physical stores, the Website is an extension of and gateway to the physical stores, which are places of public accommodation pursuant to the ADA, 42 U.S.C. §12181(7)(E).  As such, the Website is a necessary service, privilege, and advantage of Defendant's brick-and-mortar stores that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages afforded the non-visually disabled public both online and in the physical stores.

16.     At all times material hereto, Defendant was and still is an organization owning, operating, and/or controlling the Website.  Since the Website is open to the public through the internet, by this nexus the Website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar stores that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as afforded the

non-visually disabled public both online and in the physical stores. As such, Defendant has subjected itself and the Website to the requirements of the ADA.

17.     Plaintiff is and/or has been a customer who is interested in patronizing, and intends to patronize in the near future once the Website's access barriers are removed or remedied, Defendant's physical stores (including the store located at 10300 Forest Hill Boulevard, Wellington, Florida), and to search for the brick-and-mortar stores, check store hours and merchandise pricing, purchase merchandise, purchase gift cards, arrange in-store pickups and returns of merchandise purchased online, and sign up for an emailer to receive exclusive offers, benefits, invitations, and discounts for use on the Website or in Defendant's physical stores. In the alternative, Plaintiff intends to monitor the Website in the near future as a tester to ascertain whether it has been remedied and updated to interact properly with screen reader software.

18.     The opportunity to shop and pre-shop Defendant's merchandise, purchase gift cards online, arrange in-store pickups and returns of merchandise purchased online, and sign up for an emailer to receive exclusive online offers, benefits, invitations, and discounts for use both online and in the physical stores from his home are important and necessary accommodations for Plaintiff because traveling outside of his home as a visually disabled individual is often a difficult, hazardous, frightening, frustrating, and confusing experience. Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software.

19.     Like many consumers, Plaintiff accesses a number of websites at a time to help plan his store visits and to compare merchandise, services, prices, sales, discounts, and promotions. Plaintiff may look at several dozens of sites to compare features, discounts, promotions, and prices.

20.     During the month of October 2022, Plaintiff attempted on a number of occasions to utilize the Website to browse through the merchandise and online offers to educate himself as to the merchandise, services, sales, discounts, and promotions being offered, learn about the brick-and-mortar stores, check store hours, and check merchandise pricing with the intent to make a purchase through the Website or in one of the physical stores. Plaintiff also attempted to access and utilize the Website in his capacity as a tester to determine whether it was accessible to blind and visually disabled persons such as himself who use screen reader software to access and navigate company websites.

21.     Plaintiff utilizes available screen reader software that allows individuals who are blind and visually disabled to communicate with websites. However, Defendant's Website contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software. These barriers are pervasive and include, but are not limited to:

a.  Home page mislabeled as "link build a bear workshop";

b.  At header, Build a Bear Workshop icon, Heart Box icon, and Bear Cave icon are all mislabeled as "link";

c.  When choosing a furry friend, the name of the item is inaccessible, and the cursor jumps to the select button on each item;

d.  In the Sale link, when browsing the product name is read but the price is inaccessible;

e.  If the product is limited in quantity, the notification is not labeled to integrate with the screen reader;

f.  The telephone number lacks a full description; it is read as a number and does not specify it is a telephone number; and

g.  Social media links at the footer of the Website are all mislabeled as "link image".

22.     Plaintiff attempted to locate an "accessibility" notice, statement, or policy on the Website that would direct him to a webpage with contact information for disabled individuals who have questions or concerns about, or who are having difficulties communicating with, the Website. However, Plaintiff was unable to do so because no such link or notice, statement, or policy existed on the Website.

23.     The fact that Plaintiff could not communicate with or within the Website left him feeling excluded, frustrated, and humiliated, and gave him a sense of isolation and segregation, as he is unable to participate in the same shopping experience, with the same access to the merchandise, sales, services, discounts, and promotions, as provided at the Website and in the physical stores as the non-visually disabled public.

24.     Plaintiff desires and intends, in the near future once the Website's access barriers are removed or remedied, to patronize one or more of Defendant's physical stores and to use the Website, but he is presently unable to do so as he is unable to effectively communicate with Defendant due to his severe visual disability and the Website's access barriers.  Alternatively, as a tester using screen reader software, Plaintiff is unable to effectively access, navigate, and communicate with Defendant through the Website due to his severe visual disability and the Website's access barriers.  Thus, Plaintiff as well as others who are blind and with visual disabilities will suffer continuous and ongoing harm from Defendant's intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

25.     Because of the nexus between Defendant's retail stores and the Website, and the fact that the Website clearly provides support for and is connected to Defendant's retail stores for its operation and use, the Website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar stores that must comply with all requirements of the ADA, must not discriminate

against individuals with disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as afforded the non-visually disabled public both online and in the physical stores, which are places of public accommodation subject to the requirements of the ADA.

26.     On information and belief, Defendant has not initiated a Web Accessibility Policy to ensure full and equal use of the Website by individuals with disabilities.

27.     On information and belief, Defendant has not instituted a Web Accessibility Committee to ensure full and equal use of Website by individuals with disabilities.

28.     On information and belief, Defendant has not designated an employee as a Web Accessibility Coordinator to ensure full and equal use of the Website by individuals with disabilities.

29.     On information and belief, Defendant has not instituted a Web Accessibility User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

30.     On information and belief, Defendant has not instituted a User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

31.     On information and belief, Defendant has not instituted a Bug Fix Priority Policy.

32.     On information and belief, Defendant has not instituted an Automated Web Accessibility Testing program.

33.     Defendant has not created and instituted a Specialized Customer Assistance line or service or email contact mode for customer assistance for the visually disabled.

34.     Defendant has not created and instituted on the Website a page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal

explaining when and how Defendant will have the Website, applications, and digital assets accessible to the visually disabled or blind community.

35.     The Website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Level AA or higher versions of web accessibility.

36.     Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals who want the safety and privacy of purchasing Defendant's merchandise offered on the Website online from their homes.

37.     Defendant thus has not provided full and equal access to and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Website in contravention of the ADA.

38.     Public accommodations under the ADA must ensure that their places of public accommodation provide effective communication for all members of the general public, including individuals with visual disabilities such as Plaintiff.

39.     The broad mandate of the ADA is to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet shopping websites such as the Website at issue in the instant action.

40.     Defendant is, and at all relevant times has been, aware of the barriers to effective communication within the Website which prevent individuals with visual disabilities from the means to comprehend information presented therein.

41.     Defendant is, and at all relevant times has been, aware of the need to provide full access to all visitors to the Website.

42.     The barriers that exist on the Website result in discriminatory and unequal treatment of individuals with visual disabilities, including Plaintiff.

43.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is his only means to secure adequate and complete redress from Defendant's unlawful and discriminatory practices in connection with the Website's access and operation.

44.     Notice to Defendant is not required because of Defendant's failure to cure the violations.

45.     Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§2201 and 2202.

46.     Plaintiff has retained the undersigned attorneys to represent him in this case and has agreed to pay them a reasonable fee for their services.

## COUNT I – VIOLATION OF THE ADA

47.     Plaintiff re-alleges paragraphs 1 through 46 as if set forth fully herein.

48.     Pursuant to 42 U.S.C. §12181(7)(E), Defendant is a public accommodation under the ADA and thus is subject to the ADA.

49.     Pursuant to 42 U.S.C. §12181(7)(E), the Website is covered under the ADA because it provides the general public with the ability to locate and learn about Defendant's stores, purchase merchandise that is also available for purchase from and in the physical stores, purchase gift cards for use both online and in the physical stores, arrange in-store pickups and returns of merchandise purchased online, and sign up for an emailer to receive exclusive online offers, benefits, invitations, and discounts for use both online and in the physical stores.  The Website thus is an extension of, gateway to, and intangible service, privilege, and advantage of Defendant's

physical stores.  The Website also serves to augment Defendant's physical stores by providing the public information about the stores and by educating the public as to Defendant's available merchandise sold through the Website and in the physical stores.

50.     Under Title III of the ADA, 42 U.S.C. §12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

51.     Specifically, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

52.     In addition, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(III), unlawful discrimination includes, among other things, "a failure to take such steps, as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

53.     Defendant's Website must comply with the ADA, but it does not as specifically alleged hereinabove and below.

54.     Because of the inaccessibility of the Website, individuals with visual disabilities are denied full and equal access to and enjoyment of the goods, information, and services that Defendant has made available to the public on its Website and in its physical stores in violation of 42 U.S.C. §12101, *et seq*, and as prohibited by 42 U.S.C. §12182, *et seq*.

55.     The Website was subsequently visited by Plaintiff's expert in November 2022 and the expert determination was that the same access barriers that Plaintiff had initially encountered, as well as numerous additional access barriers, existed.  Despite being a defendant in prior ADA accessibility lawsuits, which likely resulted in confidential settlement agreements that obligated Defendant to fully remediate the Website, Defendant has made insufficient material changes or improvements to the Website to enable its full use, enjoyment, and accessibility for visually disabled persons such as Plaintiff.  Defendant also has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals, nor has it posted on the Website a conspicuous and effective "accessibility" notice, statement, or policy to provide blind and visually disabled persons such as Plaintiff with a viable alternative means to access and navigate the Website. Defendant thus has failed to make reasonable modifications in its policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, in violation of 28 C.F.R. §36.302.  The lack of a viable and effective "accessibility" notice, policy, or statement and the numerous access barriers as set forth in the Declaration of Plaintiff's expert, Robert D. Moody, attached hereto as Composite Exhibit "A" and the contents of which are incorporated herein by reference, continue to render the Website not fully accessible to users who are blind and visually disabled, including Plaintiff.

56.     More violations may be present on other pages of the Website, which can and will

be determined and proven through the discovery process in this case.

57.     Further, the Website does not offer or include the universal symbol for the disabled

that would permit disabled individuals to access the Website's accessibility information and

accessibility facts.

58.     There are readily available, well-established guidelines on the internet for making

Websites accessible to the blind and visually disabled. These guidelines have been followed by

other large business entities in making their websites accessible. Examples of such guidelines

include, but are not limited to, adding alt-text to graphics and ensuring that all functions can be

performed using a keyboard.  Incorporating such basic components to make the Website accessible

would neither fundamentally alter the nature of Defendant's business nor would it result in an

undue burden to Defendant.

59.     Defendant has violated the ADA -- and continues to violate the ADA -- by denying

access to the Website by individuals such as Plaintiff with visual disabilities who require the

assistance of interface with screen reader software to comprehend and access internet websites.

These violations within the Website are ongoing.

60.     The ADA requires that public accommodations and places of public

accommodation ensure that communication is effective.

61.     According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice,

text, and video-based telecommunications products and systems".  Indeed, 28 C.F.R.

§36.303(b)(2) specifically states that screen reader software is an effective method of making

visually delivered material available to individuals who are blind or have low vision.

62.     According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

63.     Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

64.     As alleged hereinabove, the Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication, and thus violates the ADA.

65.     As a direct and proximate result of Defendant's failure to provide an ADA compliant Website, with a nexus to its brick-and-mortar stores, Plaintiff has suffered an injury in fact by being denied full access to, enjoyment of, and communication with Defendant's Website and its physical stores.

66.     Because of the inadequate development and administration of the Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303 to remedy the ongoing disability discrimination.

67.     Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief, including an order to:

a)  Require Defendant to adopt and implement a web accessibility policy to make publicly available and directly link from the homepage of the Website to a functional statement as to the

Defendant's policy to ensure persons with disabilities have full and equal access to and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the physical stores through the Website.

b)  Require Defendant to take the necessary steps to make the Website readily accessible to and usable by blind and visually disabled users, and during that time period prior to the Website's being made readily accessible, provide an alternative method for individuals with visual disabilities to access the information available on the Website until such time that the requisite modifications are made, and

c)  Require Defendant to provide the appropriate auxiliary aids such that individuals with visual disabilities will be able to effectively communicate with the Website for purposes of viewing and locating Defendant's physical stores and becoming informed of and purchasing Defendant's merchandise, and during that time period prior to the Website's being designed to permit individuals with visual disabilities to effectively communicate, to provide an alternative method for individuals with visual disabilities to effectively communicate for such goods and services made available to the general public through the Website and the physical stores.

68.    Plaintiff is entitled to recover his reasonable attorney's fees, costs, and expenses pursuant to the ADA.  To that end, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action and has agreed to pay them a reasonable fee for their services.

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendant for the following relief:

A.  A declaration that Defendant's Website is in violation of the ADA;

B.  An Order requiring Defendant, by a date certain, to update the Website, and continue to monitor and update the Website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the Website and effectively communicate with the Website to the full extent required by Title III of the ADA;

C.  An Order requiring Defendant, by a date certain, to clearly display the universal disabled logo within the Website, wherein the logo[1] would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations. Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the Website;

D.  An Order requiring Defendant, by a date certain, to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to ensure compliance thereto;

E.  An Order directing Defendant, by a date certain, to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its Website;

F.  An Order directing Defendant, by a date certain, to establish a policy of web accessibility and accessibility features for the Website to ensure effective communication for individuals who are visually disabled;

---

[1]   or similar.

G.   An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's Website to be fully accessible to the visually disabled;

H.   An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, the Website on how to conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

I.   An Order directing Defendant, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of the Website to identify any instances where the Website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendant to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review;

J.   An Order directing Defendant, by a date certain, to make publicly available and directly link from the Website homepage, a statement of Defendant's Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of the Website and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems;

K.   An award to Plaintiff of his reasonable attorney's fees, costs and expenses; and

L.   Such other and further relief as the Court deems just and equitable.

DATED:  December 15, 2022.

**RODERICK V. HANNAH, ESQ., P.A.**
Counsel for Plaintiff
4800 N. Hiatus Road
Sunrise, FL 33351
T. 954/362-3800
954/362-3779 (Facsimile)
Email:  rhannah@rhannahlaw.com

**LAW OFFICE OF PELAYO
DURAN, P.A.**
Co-Counsel for Plaintiff
4640 N.W. 7th Street
Miami, FL 33126-2309
T. 305/266-9780
305/269-8311 (Facsimile)
Email: duranandassociates@gmail.com


By:___*s/ Roderick V. Hannah*___
         RODERICK V. HANNAH
         Fla. Bar No. 435384

By:___*s/ Pelayo M. Duran*___
         PELAYO M. DURAN
         Fla. Bar No. 0146595